IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JOHN LEE MOORE,                         §
TDCJ #1359685,                          §
                                        §
            Petitioner,                 §
                                        §
v.                                      §        CIVIL ACTION NO. H-10-1900
                                        §
RICK THALER, Director,                  §
Texas Department of Criminal Justice -  §
Correctional Institutions Division,     §
                                        §
            Respondent.                 §

## MEMORANDUM AND ORDER

State inmate John Lee Moore (TDCJ #1359685) has filed a petition for a writ of

habeas corpus under 28 U.S.C. § 2254 to challenge his state court conviction for aggravated

sexual assault of a child.   The respondent has answered with a motion for summary

judgment, arguing that Moore is not entitled to the relief he seeks [Doc. # 8].  Moore has

filed a reply [Doc. # 11].  After considering all of the pleadings, the state court records, and

the applicable law, the Court grants the respondent's motion, denies the petition, and

dismisses this case for reasons that follow.

## I.    BACKGROUND

A local grand jury returned separate indictments against Moore in two related cases

(Harris County cause numbers 1019524 and 1019525), charging him with sexual assault of

a child younger than 14 years of age.  In those indictments, Moore was accused of sexually

assaulting his 12-year-old niece by penetrating the victim's "female sexual organ" with his penis on July 26, 2003, and with his finger on July 27, 2003. The State of Texas enhanced the indictments for purposes of punishment with an additional allegation that Moore had one prior felony conviction.

The record shows that Moore entered a guilty plea to the charges against him on March 21, 2005, in exchange for a 20-year prison sentence. *See Clerk's Record*, at 43-55. On April 15, 2005, however, the trial court granted Moore's request to set aside the judgment and withdraw his guilty plea. *See id*. at 56, 58-61. The trial court also appointed new defense counsel. *See id*. at 57. In March of 2006, the cases were tried together before a jury in the 178th District Court for Harris County, Texas. On March 16, 2006, the jury found Moore guilty as charged in both indictments. After Moore conceded that the enhancement allegation was true, the trial court sentenced Moore to concurrent terms of 20 years' imprisonment in each case.

On direct appeal, Moore complained that the trial court erred by admitting outcry testimony from the victim's therapist without conducting a hearing on the reliability of the testimony and by permitting the State "to argue to the jury evidence which was not introduced at trial." Moore also challenged the admissibility of a videotaped interview that he gave at the Children's Assessment Center and a written statement in which Moore admitted that he had "fondle[d]" his niece "between the legs." An intermediate court of appeals rejected Moore's arguments and affirmed both convictions after summarizing the evidence presented during the trial:

Background

In the [S]ummer of 2003, twelve-year-old I.J. would visit her aunt's house to play with her two cousins. [Moore], who was the aunt's boyfriend, also lived in the house. During one of these visits, I.J. and her cousins were playing outside. When I.J. went inside to the bathroom, [Moore] entered the bathroom, grabbed I.J., and took her to his bedroom. There, [Moore] penetrated I.J.'s vagina with his finger and then his penis. A couple of days later, I.J. returned to her aunt's house to play with her cousins. This time, [Moore] sexually assaulted I.J. in the bathroom by inserting his finger into her vagina.

After the assaults, I.J. began experiencing behavior problems and was placed on juvenile probation for six months. As part of her probation conditions, I.J. attended therapy. After two months of therapy, I.J. broke down and told her therapist about the two instances of sexual abuse by [Moore]. The therapist reported the matter to authorities by calling a state 800 number designated for reporting child abuse.

*Moore v. State*, 233 S.W.3d 32, 34-35 (Tex. App. — Houston [1st Dist.] 2007). Moore did not appeal further by filing a petition for discretionary review with the Texas Court of Criminal Appeals.

Moore challenged his conviction further by filing a state habeas corpus application under Article 11.07 of the Texas Code of Criminal Procedure. In that application, Moore alleged that he was actually innocent because a nurse's examination of the victim for signs of sexual trauma did not reveal any physical evidence of penetration. Moore complained further that (1) he was denied effective assistance of counsel; (2) the trial court made several erroneous rulings; and (3) that Article 38.07 of the Texas Code of Criminal Procedure is unconstitutional.[1] After entering specific findings of fact and conclusions of law, the state

_____

[1]      Prior to trial, the State gave notice under Article 38.07 of the Texas Code of Criminal
(continued...)

3

habeas corpus court recommended that the application be denied. The Texas Court of Criminal Appeals agreed and denied Moore's application without a written order based on the habeas corpus court's findings. *See Ex parte Moore*, Nos. 11,484-03 & 11,484-04 (Tex. Crim. App. April 28, 2010).[2]

Moore, who remains in custody of the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"), now seeks a writ of habeas corpus to challenge his conviction under 28 U.S.C. § 2254. In his pending petition and supporting memorandum, Moore raises the same claims that he presented on state habeas corpus review. The respondent argues that Moore is not entitled to relief and that his petition must be dismissed. The parties' contentions are discussed further below under the governing federal habeas corpus standard of review.

## II.    STANDARD OF REVIEW

---

[1](...continued)

Procedure of its intent to use a child abuse victim's hearsay statement. *See Clerk's Record*, at 39. When a child first reports abuse, the child's "outcry" statement is admissible as an exception to the rule against hearsay under Article 38.072. *See Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991). Outcry evidence of this nature has probative value, and is, by itself, sufficient to support the jury's verdict. *Id.* Thus, the State need not present corroborating evidence. *See Eubanks v. State*, 326 S.W.3d 231, 241 (Tex. App. — Houston [1st Dist] 2010, pet. ref'd) ("There is no requirement that outcry testimony admitted as substantive evidence be corroborated or substantiated by the victim or independent evidence."). In that respect, a conviction for sexual assault or aggravated sexual assault "is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred." TEX. CODE CRIM. PROC. art. 38.07(a).

[2]    Moore was convicted of aggravated sexual assault in cause number 1019524 and 1019525. On collateral review, Moore filed an identical state habeas corpus application in each cause number. As a result, the state habeas corpus records are substantially the same. *See Ex parte Moore*, Nos. 11,484-03 & 11,484-04.

The respondent has filed a motion for summary judgment asking this court to deny relief and dismiss the petition. Motions for summary judgment are typically governed by Rule 56 of the Federal Rules of Civil Procedure. In this instance, the respondent's summary-judgment motion must be determined in compliance with the federal habeas corpus statutes. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002); *see also Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). Federal habeas corpus proceedings filed after April 24, 1996 are governed by provisions of the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). To the extent that the petitioner's claims were "adjudicated on the merits" in state court, the AEDPA standard found at 28 U.S.C. § 2254(d) applies.[3]

Claims presenting pure questions of law and mixed questions of law and fact are governed by 28 U.S.C. § 2254(d)(1), which precludes habeas relief unless a petitioner demonstrates that the state court's decision to deny a claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1); *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court

---

[3]     In addition, pre-AEDPA precedent forecloses habeas corpus relief if any of the following circumstances are present: (1) the claim is barred as a consequence of the petitioner's failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); (2) the claim seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) the claim asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000). A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *See Brown v. Payton*, 544 U.S. 133, 141 (2005). Under this standard, an unreasonable application is more than merely incorrect or erroneous; rather, the state court's application of clearly established law must be "objectively unreasonable." *Williams*, 529 U.S. at 409.

A state court's findings of fact are presumed to be correct on federal habeas review, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). This presumption extends not only to express findings of fact, but to the implicit findings of the state court as well. *See Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted). Where pure questions of fact are concerned, a petitioner is not entitled to relief unless he demonstrates that the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2); *see also Buntion v. Quarterman*, 524 F.3d 664, 670 (5th Cir. 2008).

As this deferential standard reflects, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002) (quotation omitted). In that respect, the AEDPA standard "stops short of imposing a complete bar on federal court relitigation of

claims already rejected in state court proceedings." *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786 (2011).  The Supreme Court has recently underscored the extent of this deferential standard:

> [28 U.S.C. § 2254(d)] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S. Ct. at 786-87.  The deferential AEDPA standard of review applies even where the state court fails to cite applicable Supreme Court precedent or fails to explain its decision.  *See Early v. Packer*, 537 U.S. 3, 7 (2002); *see also Richter*, — U.S. —, 131 S. Ct. at 785 (confirming that "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'").  Thus, a federal habeas corpus court's inquiry is not altered where the state court denies relief without a written opinion.  *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003).  The petitioner's claims are examined below under the applicable legal standard.

## III.   DISCUSSION

### A.   Actual Innocence

As outlined above, Moore was accused of sexually assaulting his young niece by penetrating her female sexual organ on July 26, 2003 and July 27, 2003.  On November 25, 2003, the victim was given a "complete head-to-toe exam and a genital exam looking for any signs of trauma."  *Court Reporter's Record*, vol. 3, at 171. A nurse testified at trial that this examination disclosed "no evidence of trauma."  *Id.* at 172.  On cross-examination, the nurse clarified that the victim's hymen was "intact," which "could be" consistent with "not having sexual intercourse."  *Id.* at 173.  Pointing to the medical report of the examination and the nurse's testimony, Moore maintains that there was no evidence of penetration and, therefore, that he is actually innocent.

A claim of actual innocence, standing alone, is not a cognizable ground for relief on federal habeas corpus review.  As the Supreme Court has explained, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Instead, a claim of actual innocence is "a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred constitutional claim considered on the merits." *Id.* at 404.  A petitioner seeking to surmount a procedural default through a showing of "actual innocence" must support his allegations with new, reliable evidence that was not presented at trial and must show that it was more likely than not that, in light of the new evidence, no juror, acting reasonably, would have voted to find the petitioner guilty beyond a reasonable doubt.  *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995).  *See also House v. Bell*,

547 U.S. 518 (2006) (discussing at length the evidence presented by the petitioner in support of an actual-innocence exception to the doctrine of procedural default under *Schlup v. Delo*).

Moore concedes that the above-referenced medical report and the nurse's testimony were presented at trial and that the evidence he presents is not new.  It follows that Moore fails to show that his claim of actual innocence fits within the exception to the procedural bar. Even assuming that such a claim is cognizable, Moore falls far short of the more stringent standard of proof needed to make a stand-alone claim of actual innocence under *Herrera v. Collins*, 506 U.S. 390 (1993).  *See House*, 547 U.S. at 555 (finding that the petitioner fell short of the "extraordinarily high" threshold showing necessary to make a claim of actual innocence under *Herrera*).

In this instance, the state habeas corpus court rejected Moore's claim of actual innocence, observing that Moore "fail[ed] to demonstrate that there exists newly discovered evidence that would prove his innocence." *Ex parte Moore*, Nos. 11,484-03 & 11,484-04 at 51, ¶ 2 (citing *Ex parte Brown*, 205 S.W.3d 538, 545 (Tex. Crim. App. 2006)). The state habeas corpus court found further that Moore "fail[ed] to allege sufficient facts which, if true, would show, by clear and convincing evidence, that, despite the evidence of guilt that supports the conviction, no reasonable juror could have found [Moore] guilty in light of the new evidence." *Ex parte Moore*, Nos. 11,484-03 & 11,484-04 at 51, at ¶ 3 (citing *Ex parte Tuley*, 109 S.W.3d 388, 392 (Tex. Crim. App. 2002)).  The state court's factual findings, which Moore does not disprove, are entitled to the presumption of correctness under 28 U.S.C. § 2254(e)(1).  *See Richards v. Quarterman*, 566 F.3d 553, 563 (5th Cir. 2009) (citing

*Valdez v. Cockrell*, 274 F.3d 941, 951 (5th Cir. 2001)).  Moore does not otherwise show that the state court's decision was based on an unreasonable determination of the facts.  For this reason, Moore is not entitled to federal habeas corpus relief based on his allegations of actual innocence.

To the extent that Moore challenges the sufficiency of the evidence in support of the jury's verdict against him, he fails to articulate a valid claim.  Actual innocence means "factual innocence, and not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (quoting *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).  Importantly, challenges to the factual sufficiency are not cognizable on federal habeas corpus review.  A federal habeas corpus court reviewing a petition under 28 U.S.C. § 2254 asks only whether a constitutional violation infected the petitioner's state trial.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).  The Texas factual-sufficiency standard of review is based on state law.  *See Clewis v. State*, 922 S.W.2d 126, 131-34 (Tex. Crim. App. 1996).  A federal habeas court does not sit as a super state supreme court for review of issues decided by state courts on state law grounds. *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986).  On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the legal-sufficiency analysis set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which reflects the federal constitutional due process standard.  *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002); *see also West v. Johnson*, 92 F.3d 1385, 1394 (5th Cir. 1996) (explaining that, "in challenges to state convictions under 28 U.S.C. § 2254, only *Jackson* [*v. Virginia*] need be

satisfied, even if state law would impose a more demanding standard of proof") (quotation and citations omitted).  Moore does not attempt to challenge the legal sufficiency of the evidence here.[4]  As a result, his allegation concerning the lack of physical evidence fails to state a claim upon which relief can be granted.

### B.    Ineffective Assistance of Counsel

Moore makes several allegations of ineffective-assistance against the defense attorney who represented him at trial.  In particular, Moore contends that his attorney was deficient because he failed to do the following:  (1) to conduct an adequate pretrial investigation; (2) to conduct an effective cross-examination of the victim and one other witness; and (3) to repeat a particular objection during the prosecutor's closing argument.  These claims, which were rejected on state habeas corpus review, are addressed below, following a brief overview of the legal standard that governs claims of ineffective assistance of counsel.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to have the assistance of counsel at trial. U.S. CONST. amend. VI; *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  The right to counsel guaranteed by the Sixth

---

[4]    Even if his petition were liberally construed to raise a challenge to the legal sufficiency of the evidence, such a claim would be subject to the doctrine of procedural default because Moore did not present this claim on direct appeal.  *See West v. Johnson*, 92 F.3d 1385, 1398 (5th Cir. 1996).  In this case, the victim testified that Moore sexually assaulted her on more than one occasion.  *See Court Reporter's Record*, vol. 3, at 46-99.  After viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319.  Although Moore argues that the child's testimony was not credible, "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict" during a legal-sufficiency review.  *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) (citation omitted).  Moore does not otherwise show that the evidence was legally insufficient under Texas law.

Amendment includes "the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added). Claims for ineffective assistance of counsel are analyzed under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

The first prong of the governing standard is only satisfied where the defendant shows that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687. Scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. To prove prejudice, a defendant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Moore was represented at his trial by local criminal defense counsel Rudy Duarte. At the state habeas corpus court's request, Duarte supplied a detailed affidavit in response to Moore's allegations of ineffectiveness. *See Ex parte Moore*, No. 11,484-03 & 11,484-04

12

at 47-48.  The state habeas corpus court found that Duarte's affidavit was "credible and that the facts asserted therein are true."  *Id.* at 51, ¶ 1.  After considering all of the pleadings and official court records, the state habeas corpus court found that Moore failed to establish deficient performance on his trial counsel's part.  *See id.* at 54, ¶ 18 (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (citations omitted)).  In reaching that conclusion, the state habeas corpus court expressly rejected Moore's specific allegations of deficient performance and concluded further that actual prejudice was not shown.  *See id.* at 53-54, ¶¶ 12-17, 18.

As this record shows, the state court identified the governing legal standard found in *Strickland* and applied it to Moore's ineffective-assistance claim.  Because Moore repeats the same ineffective-assistance claim on federal habeas corpus review, the central question is not whether this court "'believes the state court's determination' under the *Strickland* standard 'was incorrect but whether the determination was unreasonable — a substantially higher standard.'" *Knowles v. Mirzayance*, — U.S. —, 129 S. Ct. 1411, 1420 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)).  In addition, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Knowles*, 129 S. Ct. at 1420.  Thus, this standard is "doubly deferential" on habeas corpus review.  *Id.*; *see also Richter*, 131 S. Ct. at 788 (emphasizing that the standards created by *Strickland* and § 2254(d) are "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted).

Moore fails to show that the state court's decision was unreasonable under this doubly deferential standard for reasons outlined briefly below.

### 1.     Failure to Conduct an Adequate Investigation

Moore alleges that his defense counsel was deficient because he failed to conduct an adequate investigation prior to trial.  A habeas corpus petitioner who alleges a failure to investigate on the part of his counsel must state with specificity what the investigation would have revealed and how it would have changed the outcome of his trial.  *See Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)).  In this instance, Moore alleges that his defense counsel failed to properly investigate prior to trial by:  (a) reviewing the victim's medical records; (b) interviewing the State's witnesses; or (c) determining why only a portion of Moore's initial interview at the Children's Assessment Center was videotaped.  The Court addresses each of these allegations separately along with the state habeas corpus court's findings.

### (a)     Failure to Review the Victim's Medical Records

Moore alleges that his defense counsel conducted a deficient pretrial investigation because he failed to review medical records from the victim's sexual assault examination on November 25, 2003.  The records of that examination, which are referenced in more detail above, found no evidence of sexual trauma.  Moore maintains that, as a result of his counsel's inadequate pretrial preparation, he failed to emphasize that there was no physical evidence of penetration to corroborate the victim's allegation of sexual assault.

14

The state habeas corpus court rejected this allegation, finding that "counsel did investigate and familiarize himself with the medical records of the complainant and used the results of such investigation in his cross examination of a nurse the conducted the [c]omplainant's medical examination as well as in his final argument." *Ex parte Moore*, Nos. 11,484-03 & 11,484-04 at 53, ¶ 12. Moore does not refute the state habeas corpus court's findings, which are presumed correct for purposes of federal habeas corpus review. 28 U.S.C. § 2254(e)(1). The state court's conclusion, moreover, is supported by the record in this instance.

In his affidavit to the state habeas corpus court, Moore's defense counsel noted that the Harris County District Attorney's Office maintained an "open file" in Moore's case.[5] *See Ex parte Moore*, Nos. 11,484-03 & 11,484-04 at 47. As a result, defense counsel had "complete access to their file and investigation in this matter." *Id.* Moore's defense counsel noted further that he was provided a copy of the complainant's medical records, which were "beneficial to the [d]efense because the records did not show any trauma on [c]omplainant's genital examination." *Id.* Defense counsel observed that, to the best of his recollection, he used the medical records to cross-examine the nurse who conducted the complainant's medical examination and he also referred to the lack of medical findings during his closing argument. *Id.*

---

[5]    In addition, on March 1, 2005, the State filed a certified copy of the victim's medical records, along with a business records affidavit, with the trial court. *See Clerk's Record*, at 24-30.

The trial transcript confirms that Moore's defense counsel used the victim's medical records while cross-examining the nurse who performed the examination to show that there was no evidence of penetration or sexual trauma:

Q.      Ms. Ward, you did a full genital exam; is that correct?

A.      Yes, sir.

Q.      All right.  And was her hymen intact?

A.      Yes, sir.

Q.      Okay.  So, having an intact hymen would be consistent with someone [who] has not had sex before?

A.      The hymen is a ring around the vaginal wall.  It's not a covering over the vagina at all.  So, the only way you would tell if the hymen was tor[n] was for it to be stretched beyond its capacity.

Q.      So, in this instance, her hymen was intact, meaning it was not torn?

A.      There were no tears on her hymen, correct.

Q.      So, her hymen was intact?

A.      The hymenal ring was intact.  The hymenal ring is not covering the vagina.

Q.      Could having an intact hymen be consistent with not having sexual intercourse?

A.      It could be . . . .

Q.      And, as you said, there was no evidence of any bruising or any tearing; is that correct?

A.      That's correct.

*Court Reporter's Record*, vol. 3, at 173-74.  In addition to making use of the medical records during cross-examination, defense counsel also emphasized the lack of physical evidence during his closing argument.  *See, e.g., Court Reporter's Record*, vol. 4, at 7-8 ("Did [the State] bring you any medical evidence to substantiate anything that would have physically occurred to [the victim]? . . . ").

Moore does not allege facts showing what more his counsel could have done to emphasize the lack of physical evidence to substantiate the victim's claim of sexual assault.  Moore's conclusory allegations are insufficient to demonstrate deficient performance or actual prejudice.  *See Day v. Quarterman*, 566 F.3d 527, 540-41 (5th Cir. 2009); *see also Lincecum v. Collins*, 958 F.2d 1271, 1279 (5th Cir. 1992) (denying habeas relief where petitioner "offered nothing more than the conclusory allegations in his pleadings" to support claim that counsel was ineffective for failing to investigate and present evidence).  Based on this record, Moore does not establish that he was denied effective assistance of counsel in connection with the victim's medical records.  More importantly, Moore does not show that the state court's decision to reject this claim was objectively unreasonable.  Accordingly, he is not entitled to relief on this issue.

### (b)     Failure to Interview the State's Witnesses

Moore complains that his defense attorney was deficient because he failed to interview any of the State's witnesses before trial.  Moore contends that, because he did not

interview the witnesses before trial, he was unprepared to cross-examine the victim about her allegations of sexual assault. The state habeas corpus court determined that these allegations were unfounded. *See Ex parte Moore*, Nos. 11,484-03 & 11,484-04 at 53, ¶ 13.

In his affidavit to the state habeas corpus court, Moore's defense counsel explained that he hired a private investigator to interview the witnesses, including the victim, who made a contradictory statement about the sexual assault during her interview. *See Ex parte Moore* Nos. 11,484-03 & 11,484-04 at 48. The record confirms that defense counsel called the private investigator (Carolyn Porter) as a witness to testify about the victim's inconsistent statement during the guilt/innocent phase of the trial. *See Court Reporter's Record*, vol. 3, at 192. The investigator testified that, during her interview with the victim and her mother, the victim admitted that Moore had "never" penetrated her with his penis or shown her his penis. *Id*. at 192-93. Defense counsel also referenced the victim's contradictory account during his closing statement. *See id*., vol. 4, at 7-8.

Based on this record, the state habeas corpus court found that defense counsel "hired an investigator who interviewed the complainant, and as a result of statements given to the investigator, counsel was able to cross examine the complainant based on contradictory statements of the sexual assault as well as mention this contradiction during closing argument." *Ex parte Moore*, Nos. 11,484-03 & 11,484-04 at 53, ¶ 13. The state habeas corpus court found further that Moore failed to allege what more in-depth investigation by counsel would have shown, or how such investigation would have benefitted his defense. *See id*. at 54, ¶ 16. Moore does not attempt to refute the state court's findings in any way and

18

he does not otherwise demonstrate that his counsel was deficient for failing to interview witnesses.  Therefore, Moore fails to establish that the state court's decision to reject his ineffective-assistance claim on this issue was objectively unreasonable.  It follows that he is not entitled to relief on this issue.

### (c)   Failure to Investigate the Videotape of Moore's Interview

On February 20, 2004, Moore was interviewed by an investigative caseworker (Yolanda Alpough) at the Children's Assessment Center, which is affiliated with the Texas Department of Family and Protective Services (formerly known as Children's Protective Service or CPS).  During that interview, Moore admitted making improper contact with the victim.  Only a portion of the interview was videotaped.  On that same date, Moore gave a handwritten statement to Officer Mickey Stephens, admitting that he "fondle[d] his niece "between the legs" on one occasion and that he inadvertently touched her "between her legs" on another occasion.  *Court Reporter's Record*, State's Ex. 3.  Moore complains that his written statement was involuntary and that the videotape was substantially incomplete because it only showed "the last forty-five minutes of a three-hour interrogation."  Moore maintains that his counsel failed to "pursue any type of investigation into the reason for the unrecorded portion" of the videotape.  The record also refutes this claim.

In his affidavit to the state habeas corpus court, defense counsel noted that he filed a motion to suppress or exclude Moore's confession and the statements given during his videotaped interview from trial. *Ex parte Moore*, Nos. 11,484-03 & 11,484-04 at 43.  In that motion, defense counsel argued that Moore's statements were coerced by law enforcement.

*See Clerk's Record*, at 90-93.  During that suppression hearing, Ms. Alpough admitted under examination by defense counsel that the video camera did not record all of the conversations that she had with Moore at the Children's Assessment Center during his interview on February 20, 2004.  *See Court Reporter's Record*, vol. 1, at 40.  She explained, however, that any failure to record the entire interview was "unintentional" and that she was not sure why the recording stopped when it did.  *See id*. at 40-41.  The trial court found that the statements given by Moore at the Children's Assessment Center were voluntary and denied the suppression motion at the close of the hearing.  *See id*. at 85.

Moore's defense counsel repeated many of his arguments at trial, where he cross-examined Officer Stevens and Ms. Alpough further about whether Moore's statements were voluntarily made or coerced by threats.  *See Court Reporter's Record*, vol. 3, at 137-55, 156-168.  As a result of his efforts, defense counsel requested and obtained a limiting instruction under Article 38.23 of the Texas Code of Criminal Procedure,[6] so that the jury could reconsider the validity of Moore's statements to police.  *See Clerk's Record*, at 133.

The state habeas corpus court found, based on its review of the record and Duarte's credible affidavit, that defense counsel "investigated the completeness of [Moore]'s videotaped statements and used the results of his investigation to file a motion to

---

[6]     Article 38.23 of the Texas Code of Criminal Procedure prohibits the use of evidence against an accused at trial that was obtained "in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America[.]"  TEX. CODE CRIM. PROC. art. 38.23(a).  If a defendant sufficiently raises this issue at trial, then he may be entitled to a limiting instruction that allows the jury to consider whether the evidence was illegally obtained and, if so, the jury may disregard that evidence.  *Id.*

suppress/exclude the use of such statement during trial, which was denied by the court." *Ex parte Moore*, Nos. 11,484-03 & 11,484-04 at 53, ¶ 14.  The state habeas corpus court found further that, as a result of defense counsel's investigation regarding the completeness of Moore's videotaped statements, counsel was able to cross examine the witness who took the statement and was also able to request a limiting instruction in the jury charge under Article 38.23 of the Texas Code of Criminal Procedure. *Ex parte Moore*, Nos. 11,484-03 & 11,484-04 at 53, ¶ 15.

Moore does not refute the state court's findings, which are supported by the record. Likewise, Moore does not allege facts showing what more his counsel could have done to investigate the videotaped statement or the voluntary character of his written confession. Even assuming that there was something else his counsel could have done, Moore does not demonstrate that additional investigation would have made a difference in the result. Moore does not establish that he was denied effective assistance of counsel in connection with any failure to investigate the videotaped statement.  Moreover, he does not show that the state court's decision to reject this claim was objectively unreasonable.  Accordingly, Moore is not entitled to relief on this issue.

### 2.    Failure to Conduct an Adequate Cross-Examination

Moore complains further that his attorney failed to conduct an adequate cross-examination of the victim and another witness named John Schwartz, who conducted a second interview with Moore at the Children's Assessment Center on March 23, 2004.  The state habeas corpus court rejected these claims, finding that Moore failed to meet his burden

to show that his counsel's performance was deficient.  *See Ex parte Moore*, Nos. 11,484-03 & 11,484-04 at 54, ¶ 18.  As outlined briefly below, the record does not demonstrate that counsel's performance was deficient or that the state court's decision was objectively unreasonable where either witness is concerned.

### a.      Defense Counsel's Cross-Examination of the Victim

Moore maintains that his attorney was not aggressive enough when he confronted the victim with an inconsistent statement that she made to private investigator Carolyn Porter. As noted above, Ms. Porter was hired by the defense to interview witnesses.  Porter testified that, during one of these interviews, the victim told her that Moore never penetrated her with his penis.  The record shows that defense counsel cross-examined the victim three separate times about her statement to the private investigator, which contradicted the victim's claim that Moore sexually assaulted her by penetrating her vagina with his penis.  *See Court Reporter's Record*, vol. 3, at 67-87, 90-91, 93-96.  Under questioning from defense counsel, the victim agreed that she told the private investigator that Moore did not penetrate her with his penis.  *See id*. at 90-91.

Moore does not allege facts showing that his counsel's tactical choice was unsound or that he had a plausible basis to question the victim more harshly.  In that regard, decisions about cross-examination are strategic choices that are entitled to substantial deference in the hindsight of federal habeas review.  *See Strickland*, 466 U.S. at 689 (emphasizing that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight").  As the Supreme

Court has repeated, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 690-91)).

The victim was only 12 years old when the alleged abuse occurred and she was 15 years of age at the time the trial occurred.  The record also reflects that the victim suffers from a learning disability and that she was described as "very slow" by more than one witness.  *Court Reporter's Record*, vol. 3, at 22, 102, 124-25. The record further shows that the victim was confused during her testimony and that she was unable to understand many of the questions that were posed.  *See id.* at 91-98.  Defense counsel cross-examined the victim about her statement three separate times.  *See Court Reporter's Record*, vol. 3, at 67-87, 90-91, 93-96.  Moore does not propose what else his attorney could have done other than to say that his attorney should have been more aggressive.  A more aggressive strategy, however, may have been viewed negatively by the jury.  Under these circumstances, Moore does not establish that his attorney's strategy was deficient or that the state court's decision to reject this claim was objectively unreasonable under the well-established *Strickland* standard.  Therefore, Moore is not entitled to relief on this issue.

### b.  Defense Counsel's Cross-Examination of John Schwartz

Moore also complains that his defense counsel failed to effectively cross-examine John Schwartz, who testified as a witness for the State.  Mr. Schwartz was a "forensic interviewer" for the Texas Department of Family and Protective Services.  *Court Reporter's Record*, vol. 3, at 37.  Schwartz conducted a forensic interview with Moore at the Children's

Assessment Center on March 23, 2004, regarding the allegations of sexual abuse by his niece.  Moore complains that his defense attorney should have challenged the following testimony given by Schwartz during his direct examination regarding a spontaneous remark that Moore allegedly made during the forensic interview:

Q.      . . . [D]id [Moore] make a statement to you that caused you alarm?

A.      Yes.

        MR. DUARTE:      I object to any statement that calls for a hearsay response.

        COURT:             Overruled.

        MR. DUARTE:      I also object under 403, Rules of Evidence.

        COURT:             Overruled.

A.      We were discussing the alleged victim and he made a comment to me, a spontaneous remark, that *her bush is tighter than my wife's*.

Q.      And after he made that statement, what did you tell him?

A.      I said, how do you know that?  And his response to me was, well, she put my hand on it.

*Court Reporter's Record*, vol. 3, at 39 (emphasis added).  Moore claims that he never made any such comparison between his wife and the victim, but that his defense counsel refused to attack Schwartz's credibility or to question the veracity of his testimony.

As this record shows, defense counsel raised two separate objections to Schwartz's testimony about Moore's comment.  *See Court Reporter's Record*, vol. 3, at 39.  The trial court, however, overruled his objections.  *See id.*  During his cross-examination, defense counsel noted that Schwartz was an independent contractor who was paid to conduct

interviews for the Children's Assessment Center. *See id*. at 40. When questioned about the above-referenced remark, Schwartz could not confirm that Moore was actually talking about the victim when the remark was made. *See id*. Schwartz also admitted that the interview was not recorded or videotaped and that there was nothing to corroborate the comment that was attributed to Moore. *See id*. at 40-43. Likewise, Schwartz acknowledged that Moore had not been "read[] his rights" or given "the *Miranda* warnings" before the interview.[7] *Id*. at 43.

This record shows that defense counsel's cross-examination strategy was carefully planned to illustrate that Moore's comment to Schwartz could not be corroborated and that the interview was conducted without the benefit of *Miranda* warnings. The Fifth Circuit has repeatedly held that "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997); *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (citing *Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir. 1975); *Daniels v. Maggio*, 669 F.2d 1075 (5th Cir. 1982)). Moore does not demonstrate that his trial was tainted by unfairness as the result of his counsel's cross-examination strategy. In that respect, Moore does not allege facts or suggest what other line of questioning his defense counsel could have pursued to undercut

---

[7]    In *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966), the Supreme Court outlined certain rights of which suspects must be advised by law enforcement officers before custodial interrogation takes place. These rights include: (1) the right to remain silent; (2) that any statement made may be used against them at trial; (3) the right to the presence of an attorney during questioning; and (4) if a suspect cannot afford an attorney, one will be appointed for him. These familiar procedural safeguards, commonly known as "*Miranda* rights," are designed to protect an accused's Fifth Amendment privilege against self-incrimination during custodial interrogation. *See Gachot v. Stalder*, 298 F.3d 414, 418 (5th Cir. 2002).

the testimony given by Mr. Schwartz.  Based on this record, Moore does not show that counsel's trial strategy was deficient or that he was actually prejudiced by his counsel's performance during cross-examination.  Because Moore fails to show that the state court's decision to deny relief was objectively unreasonable, he is not entitled to relief on his claim that counsel failed to conduct an adequate cross-examination.

### 3.  Failure to Object to Improper Argument

Moore alleges that his attorney was deficient because he failed to object when the prosecutor referred to evidence outside the record during closing argument.  In particular, Moore complains that the prosecutor (Ms. Ansari) improperly mentioned a videotaped statement given by the victim shortly after her outcry of sexual abuse:

> Ms. Ansari:  The first thing [the victim] did when this investigation started, and the first thing any child does in these kind of cases, is a forensic interview at the Children's Assessment Center.  It's on video, it's in our files.  As I told you on voir dire, those — that video does not come —

> Mr. Duarte:  Objection to [alluding to the videotape] that's not in evidence, Judge, the video interview of the child.  It's improper, Judge.

> Court:  Overruled.

> Ms. Ansari:  That video does not come into evidence unless for a prior inconsistent statement.  You did not see that video for a reason, because she is consistent. Everything she said on the stand yesterday is what she said back two years ago.  It has not changed. She's continuously consistent, but start using big words or talk real fast, she gets confused.  Don't hold that against her.

*Court Reporter's Record*, vol. 4, at 19.   Moore acknowledges that his defense counsel attempted to object to the videotape's mention, but complains that the objection was premature.   Moore reasons, therefore, that his defense counsel was deficient for failing to re-urge his objection after the prosecutor completed her remark.

The state habeas corpus court found that Moore failed to show that he had a valid objection to make or that trial court "would have erred in overruling an additional objection to the alleged improper closing argument of the State[.]" *Ex parte Moore*, Nos. 11,484-03 & 11,484-04 at 54, ¶ 17.   Accordingly, the state court found that Moore failed to demonstrate that his defense counsel was ineffective for failing to make an objection.   *Id.* (citing *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996) (to show ineffective assistance of counsel for failure to object during trial, applicant must show that trial judge would have committed error in overruling objection)).

Moore does not demonstrate that, if counsel had repeated the objection, the trial court would have sustained the objection.   He does not otherwise show that his counsel had, but failed to make, any other valid objection.   Absent a showing that counsel failed to raise a meritorious objection and that the outcome would have been different, the petitioner fails to demonstrate deficient performance or actual prejudice.   *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that counsel was not deficient in failing to present a meritless argument) (citation omitted);   *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.");   *Lavernia v. Lynaugh*, 845 F.2d 493, 499 (5th Cir. 1988) ("Counsel

27

cannot be faulted for failing to pursue meritless motions.") (citations omitted); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions.").

Alternatively, even if counsel failed to raise a valid objection to the prosecutor's remark about the videotape, Moore still does not demonstrate that his counsel's performance was deficient or that he was actually prejudiced as a result. The Fifth Circuit has recognized that decisions about whether to object during closing argument are a matter of trial strategy, which is not subject to judicial hindsight or second-guessing. *See Drew v. Collins*, 964 F.2d 411, 423 (5th Cir. 1992); *Wilson v. Cockrell*, 75 F. App'x 983, 2003 WL 21766540, *10 (5th Cir. 2003). Where the objection proposed by a defendant has only dubious merit, at best, an attorney may make a strategic choice to forego such an objection to avoid antagonizing the jury. *See Wiley v. Puckett*, 969 F.2d 86, 102 (5th Cir. 1992); *Spicer v. Cain*, 2007 WL 4532221 (E.D. La. 2007) (noting that this is "especially . . . true with respect to possible objections to a closing argument, which jurors are instructed not to view as evidence"). As the prosecutor's comment reflects, the jury was told about the victim's videotaped statement during voir dire. In that context, the prosecutor explained to the venire that "there are certain things that you cannot get into evidence," including police offense reports and videotaped statements by children. *Court Reporter's Record*, vol. 2, at 94. The prosecutor explained that these items contain hearsay which means "an out-of-court statement." *Id.* She explained further that these items generally are not admissible unless there has been an inconsistent statement. *See id.* This record shows that the prosecutor's comment about the videotape was

28

limited and was not emphasized.  Moreover, the isolated reference made by the prosecutor was not clearly improper and the error, if any, was harmless under the circumstances.[8]  *See Cotton v. Cockrell*, 343 F.3d 746, 752 (5th Cir. 2003);  *Nethery v. Collins*, 993 F.2d 1154, 1159 (5th Cir.1993).  Based on this record, Moore fails to demonstrate that his counsel was constitutionally ineffective for failing to object or that the state habeas corpus court's decision to reject this claim was objectively unreasonable.

### C.    Remaining Claims — Procedural Default

Moore complains that the trial court erred in the following manner: (1) by overruling his counsel's request for a preliminary hearing on the reliability of the victim's outcry statement; (2) by allowing the prosecution to present multiple outcry witnesses; and (3) by admitting his statements, which were made under duress and without the benefit of *Miranda* warnings.  Moore also complains that Article 38.07 of the Texas Code of Criminal Procedure, which allows a conviction for sexual assault based on the uncorroborated testimony of the victim, is unconstitutional.  Because the last state court to consider these claims expressly and unambiguously based its denial of relief on a state procedural default,

_____

[8]    When the state court of appeals considered this issue, it found that the prosecutor's remark about the videotape, standing alone, "was not harmful" in Moore's case. *Moore v. State*, 233 S.W.3d 32, 38 n.2 (Tex. App. — Houston [1st Dist.] 2007, no pet.).  In particular, the court held that the isolated statement "did not affect" Moore's "substantial rights." *Id*.  Moore does not show otherwise here or demonstrate that the error, if any, was harmful. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (holding that, on federal habeas corpus review under 28 U.S.C. § 2254, the *Brecht* standard of harmless error applies whether or not the state court conducted a harmlessness review under *Chapman*).

the respondent argues that these claims are procedurally barred from federal habeas corpus review.

The doctrine of procedural default implicates principles of federalism and comity, which require a habeas petitioner to first present his claims in state court and to exhaust all state court remedies through proper adjudication.  *See* 28 U.S.C. § 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).  "To satisfy the exhaustion requirement, the petitioner must fairly present the substance of his federal claim to the highest state court." *Ries v. Quarterman*, 522 F.3d 517, 523 (5th Cir. 2008).  "A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Beard v. Kindler*, — U.S. —, 130 S. Ct. 612, 614 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  A state procedural rule is adequate to bar federal habeas review if "the state rule in question was 'firmly established and regularly followed.'" *Kindler*, 130 S. Ct. at 617-18 (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)).  "The state law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits."  *Walker v. Martin*, — U.S.—, 131 S. Ct. 1120, 1127 (2011) (citing *Wainwright v. Sykes*, 433 U.S. 72, 81-82, 90 (1977)).

The state habeas corpus court declined to address Moore's claims concerning error on the trial court's part because these issues had been raised and rejected already on direct appeal.  *Ex parte Moore*, Nos. 11,484-03 & 11,484-04 at 52, ¶¶ 6-8 (citing *Ex parte Brown*, 205 S.W.3d 538, 546 (Tex. Crim. App. 2006)).  It is well established in Texas that a habeas

corpus court need not address a claim that was previously raised and rejected on direct appeal. *Ex parte Acosta*, 672 S.W.2d 470, 472 (Tex. Crim. App. 1984) (citing *Ex Parte Moffett*, 542 S.W.2d 184 (Tex. Crim. App. 1976)); *see also Gonzalez v. State*, 994 S.W.2d 369, 372 (Tex. App. — Waco 1999) (noting that a claim previously raised and rejected on direct appeal is not cognizable on state habeas corpus review).  The Fifth Circuit has recognized that this independent state procedural rule is adequate to bar federal habeas corpus review.[9]  *See Prieto v. Quarterman*, 292 F. App'x 372, 376-77, 2008 WL 4218822 (5th Cir. 2008); *see also Henline v. Director*, 2007 WL 760380, *8 (E.D. Tex. March 8, 2007) (applying the rule in *Acosta*, among other cases, to procedurally bar a claim).

The state habeas corpus court rejected Moore's challenge to the constitutionality of Article 38.07 because such a claim was evident from the trial court record, but was not raised on direct appeal.  In that respect, the state habeas corpus court found that Moore waived review of this "record claim" by failing to raise it on direct appeal.  *Ex parte Moore*, Nos. 11,484-03 & 11,484-04 at 52 ¶ 10 (citing *Ex parte Cruzata*, 220 S.W.3d 518, 520 (Tex. Crim. App. 2007)).  Texas law requires that a petitioner raise on direct appeal any claim based upon the trial court record or he forfeits review.  *See Ex parte Townsend*, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004).  It is established law in Texas that the writ of habeas corpus may not be used "to litigate matters which should have been raised on direct appeal." *Ex*

---

[9]     Moore did not file a petition for discretionary review on direct appeal.  As a result, Moore did not present these claims properly on direct appeal.  Moore's failure to raise these claims in a procedurally proper manner deprived the state court of the opportunity to review them, resulting in a procedural default.  *See Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).

*parte Nelson*, 137 S.W.3d 666, 667 (Tex. Crim. App. 2004) (citing *Ex parte Goodman*, 816 S.W.2d 383, 385 (Tex. Crim. App. 1991); *Ex parte Groves*, 571 S.W.2d 888, 890; and *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1998)).  The Fifth Circuit has also recognized that "this rule is an 'adequate state ground capable of barring federal habeas review.'"  *Scheanette v. Quarterman*, 482 F.3d 815, 827 (5th Cir. 2007) (quoting *Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004)); *see also Finley v. Johnson*, 243 F.3d 215, 219 (5th Cir. 2001) (invoking the same procedural default to bar federal habeas review).

To avoid the procedural bar, it is the petitioner's burden to show that the state procedural rule is not regularly followed or that the rule at issue was applied in an "exorbitant" manner under the circumstances of his case.  *See Lee v. Kemna*, 534 U.S. 362, 376 (2002); *see also Wright v. Quarterman*, 470 F.3d 581, 586 (5th Cir. 2006) (citations omitted).  Moore has filed a reply to the respondent's summary judgment motion, but he does not attempt to show that the procedural rule at issue was improperly applied [Doc. # 11].  Accordingly, review of the above-referenced claims is procedurally barred from federal habeas corpus review unless Moore can demonstrate that an exception applies.

Where a petitioner has procedurally defaulted a claim in state court, federal habeas corpus review is available only if he can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that failure to consider the claims will result in a "fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750; *Paredes v. Quarterman*, 574 F.3d 281, 289 (5th Cir. 2009) (citations omitted).  In the non-capital context, the fundamental-miscarriage-of-justice exception requires a showing "that

a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) (quotation omitted).  As outlined above, Moore does not present meaningful evidence of his actual innocence and he does not otherwise show that the fundamental-miscarriage-of-justice exception applies in this case.  *See Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *see also Schlup v. Delo*, 513 U.S. 298, 324 (1995) ("To be credible," a petitioner must support a claim of actual innocence with "new reliable evidence" that was not presented at trial).  Therefore, review of Moore's defaulted claims depends on the existence of cause and actual prejudice.

Valid cause requires a showing "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Actual prejudice requires a showing that, based on the success of the underlying defaulted claim, the result of the proceeding would somehow have been different.  *See Barrientes v. Johnson*, 221 F.3d 741, 769 (5th Cir. 2000) (citation omitted).  As cause for his default, Moore blames his appellate attorney for failing to present the above-referenced claims properly on direct appeal [Doc. # 11].  Ineffective assistance of counsel may constitute cause in some cases.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  An ineffective-assistance claim must first "be presented to the state courts as an independent claim before it can be used to establish cause for a procedural default." *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 489 (2000)).

Because Moore has not raised a claim of ineffective assistance against his appellate attorney, his allegation of deficient performance is not adequate to constitute cause.

Even if Moore had demonstrated cause for his default, he does not show that any of his underlying defaulted claims would have been successful if they had been presented properly in state court.[10]   Absent a showing of both cause and actual prejudice, Moore's remaining claims are procedurally barred from federal review.   The respondent is therefore entitled to summary judgment.

## IV.    CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the AEDPA, codified at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed.   *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).   "This

---

[10]    The intermediate court of appeals rejected Moore's *Miranda* claim and found that his statements were voluntary.   *See Moore v. State*, 233 S.W.3d 32, 38-46 (Tex. App. — Houston [1st Dist.] 2007).   Moore does not demonstrate that the state court's decision was erroneous.   Apart from this claim, Moore's allegations of trial court error concern issues of state law.   As the Supreme Court has held repeatedly, "federal habeas corpus relief does not lie for errors of state law."   *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).   An error of state law "does not justify federal habeas corpus relief unless it is of such magnitude as to constitute a denial of fundamental fairness under the due process clause."   *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983).   Moore does not show that his trial was rendered fundamentally unfair as the result of any of the trial court's rulings.   Likewise, Moore does not show that Article 38.07 of the Texas Code of Criminal Procedure is unconstitutional for the reason he asserts.   In that respect, the statute does not violate due process by reducing the state's burden of proof. *See Lindquist v. State*, 922 S.W.2d 223, 228 (Tex. App. — Austin 1996, pet. ref'd) ("[A]rticle 38.07 . . . does not permit conviction on *less* evidence . . . because . . . the State maintains the burden of proving all elements of the penal code provision beyond a reasonable doubt[.]") (emphasis in original); *see also Graves v. State*, 994 S.W.2d 238, 242 (Tex. App. — Corpus Christi 1999, pet. ref'd) (same)    Because these claims are procedurally barred, the Court declines to address these issues further.

is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court concludes that reasonable jurists would not debate whether the petition should have been resolved in a different manner.  Likewise, the Court concludes that jurists of

35

reason would not debate whether any procedural ruling in this case was correct or whether the petitioner has stated a valid claim of the denial of a constitutional right.  Therefore, a certificate of appealability will not issue.

## V.    CONCLUSION AND ORDER

Based on the foregoing, the court **ORDERS** as follows:

1.     The respondent's motion for summary judgment [Doc. # 8] is **GRANTED**.

2.     The petition for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED** with prejudice.

3.     A certificate of appealability is **DENIED**.

4.     In compliance with local policy and Rule 5.2 of the Federal Rules of Civil Procedure, the Clerk shall place the state court records, which contain un-redacted information identifying the victim, who was a minor in this case [Doc. # 7], **UNDER SEAL**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, on  April 22, 2011.

Nancy F. Atlas
United States District Judge